UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| OFFICE OF THE CHILD ADVOCATE ON BEHALF OF JANE DOE,     Plaintiff, <br><br> v. <br><br> PROVIDENCE PUBLIC SCHOOL DEPARTMENT,     Defendant. | ) ) ) ) ) ) ) ) ) ) ) )      25-cv-649-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Plaintiff Office of the Child Advocate ("OCA") brings this action on behalf of minor Jane Doe ("Jane"), seeking judicial review of an administrative decision in which a hearing officer determined that OCA lacked standing to file a due process complaint under 34 C.F.R. § 300.507(a).  OCA filed this Complaint against the Defendant Providence Public School Department's ("PPSD") claiming that PPSD was violating minor Jane Doe's rights under the Individuals with Disabilities Education Act ("IDEA"), specifically 20 U.S.C. § 1412(a)(3).

PPSD has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing.  ECF No. 12.  This motion addresses the question of first impression: whether the Rhode Island OCA can act as a "parent" under the IDEA.  For the reasons below, the Court answers that question, "Yes," and denies PPSD's Motion to Dismiss.

## I.    BACKGROUND[1]

### A. Factual Background

Jane has been in the custody of the Rhode Island Department of Children Youth and Families ("DCYF") and placed in foster care with relatives since an early age.  She had qualified for special education including in-classroom support.  She exited special education in the fifth grade.  At her prior school district, Jane was denied a renewed referral for special education evaluation, stating it did not suspect a qualifying disability.  Later, the district agreed to evaluate Jane for a Section 504 plan.

Jane transferred to Providence and therefore came under the PPSD.  PPSD convened a referral meeting but denied Jane eligibility for special education without reviewing the clinical evaluation.[2]  OCA objected, citing procedural violations under the IDEA, but no corrective action was taken.  OCA then requested that PPSD reconvene the referral team and PPSD did not respond.  OCA continued to monitor Jane's case and concluded that her rights under federal law were being violated, which resulted in OCA's request for a hearing on behalf of Jane.

### B. Procedural History

Before the filing of this Complaint, DCYF asked the Rhode Island Department of Education ("RIDE") to appoint a "surrogate parent" for Jane parent and Teresa

---

[1] The following facts are drawn from the OCA's Complaint and attached exhibits and are accepted as true for purposes of the Motion to Dismiss. *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

[2] The meeting was conducted by counsel rather than a local education agency representative and lasted about five minutes.

Barros was appointed.  OCA soon became involved in Jane's care while she was in state custody.  Katelyn Medeiros, in her capacity as Child Advocate for the Rhode Island OCA, filed a due process complaint against PPSD on Jane's behalf, listing the surrogate parent as Jane's guardian.  At the time the complaint was filed, PPSD was Jane's current school district and the local education agency responsible for her education.  RIDE participated as amicus curiae in the underlying administrative proceedings.

PPSD moved to dismiss the due process complaint claiming OCA lacked standing.  OCA opposed the motion.[3]  The hearing officer granted PPSD's motion to dismiss, concluding that OCA lacked standing to bring the complaint on Jane's behalf.  This lawsuit ensued.

## II.    STANDARD OF REVIEW

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  A plaintiff bears the burden of establishing subject matter jurisdiction. *Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 21 (1st Cir. 2017).  When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), granting such a motion "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." *Muniz-Rivera v. United States*, 326 F.3d 8, 11 (1st Cir. 2003).  "When a district court considers a Rule 12(b)(1) motion,

---

[3] The parties also disputed whether RIDE could participate as amicus curiae, which the hearing officer allowed.

3

it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

## III. DISCUSSION

### A. IDEA

#### 1. Overview

Congress enacted the IDEA to help states provide educational services to children with disabilities. *See C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005). The statute conditions the receipt of federal funding on a state's compliance with its obligation to provide all children with disabilities a "free appropriate public education" ("FAPE"). *See Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 19 (1st Cir. 2019) (citing 20 U.S.C. § 1412(a)(1)). FAPE requires that school districts furnish special education in the form of "specially designed instruction, at no cost to parents, to meet the unique needs of" the child, as well as related services that "may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26), (29); *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017). The Individualized Education Program ("IEP") is the IDEA's primary mechanism for ensuring that children with disabilities receive a FAPE. *Id.* "[T]he services offered in an IEP amount to a FAPE if they are 'reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" *C.D. by & through M.D. v. Natick Pub. Sch. Dist.*, 924 F.3d 621, 624-

25 (1st Cir. 2019) (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017)).

### 2. Standing Requirements

IDEA allows a "parent" of a child with a disability to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such a child." 20 U.S.C. § 1415(b)(6). If a dispute arises between parents and a school district concerning the application of IDEA to a particular child, the statute requires the state to provide an impartial hearing. 20 U.S.C. § 1415(f)(1)(A).

For purposes of IDEA, a "parent" is defined as (1) "a natural, adoptive, or foster parent of a child"; (2) "a guardian"; or (3) "an individual acting in the place of a natural or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare." 20 U.S.C. § 1401(23)(A)-(C); *see also* 34 C.F.R. § 300.30(a).

### B. OCA's Basis for Standing Under the IDEA

OCA claims standing under the IDEA because its statutory mandate functionally places it within the IDEA's definition of a "parent." Under Rhode Island law, the Child Advocate may "[t]ake all possible action including, but not limited to, programs of public education, legislative advocacy, and formal legal action, to secure and ensure the legal, civil, and special rights of children." R.I. Gen. Laws § 42-73-7 (emphasis added). Relying on this broad grant of authority, OCA further argues that it qualifies as "an individual who is legally responsible for the child's welfare" within

the meaning of 20 U.S.C. § 1401(23), and its implementing regulation, 34 C.F.R. § 300.30(a)(4). On that basis, OCA maintains that they have standing to initiate due process proceedings to vindicate Jane's educational rights.

### C. Multiple Individuals May Qualify As a "Parent" Under 20 U.S.C. § 1401(23)(C)

PPSD argues that only a "parent" may file a due process complaint under IDEA, and that Teresa Barros is the only individual with standing to do so on behalf of Jane. They also argue that the IDEA regulations expressly exclude the State from acting as a "parent" when the child is a ward of the State. OCA does not dispute that Ms. Barros qualifies as a parent under IDEA. Rather, it argues that there are two parties who both qualify as a "parent" under the language of 34 C.F.R. § 300.30.

The statutory text of 20 U.S.C. § 1401(23) reflects congressional intent to recognize more than one person as a "parent" for purposes of the Act.[4] *See Q.T. on behalf of H.P.-B. v. Pottsgrove Sch. Dist.*, 70 F.4th 663, 667 (3d Cir. 2023) ("The text of the statute does indicate an unambiguous congressional intent to qualify multiple persons as parents for purposes of the IDEA."). So, PPSD's argument that Ms. Barros is the only person authorized to bring such an action is unavailing.

PPSD's argument that 34 C.F.R. § 300.30(a)(3) expressly precludes the State from serving as a "parent" when the child is a ward of the State is also unpersuasive. OCA is not the "State" under the statute. The provision at issue refers to "[a] guardian … (but not the State if the child is a ward of the State)." 34 C.F.R.

---

[4] The text does not provide any language signaling Congress' intent to only include person(s) with "close" relationships or who live with the child.

§ 300.30(a)(3). The operative term in this clause is "guardian," which is defined as an individual "generally authorized to act as the child's parent, or authorized to make educational decisions for the child." 34 C.F.R. § 300.30(3). OCA lacks authority to obtain guardianship over children in state care. DCYF is the only welfare agency in Rhode Island vested with such authority. OCA does not assert itself as a guardian, rather it asserts that it is "legally responsible for the child's welfare" thus giving it standing as a parent under the IDEA.

Furthermore, a "ward of the State" is defined as "a child who, as determined by the State where the child resides, is – (1) a foster child; (2) a ward of the State; or (3) in the custody of a public child welfare agency." 34 C.F.R. § 300.45. Again, DCYF is the only agency responsible for child welfare in Rhode Island. The OCA, who is appointed by the Governor with the advice and consent of the Senate, acts independently of the DCYF and serves a supervisory and oversight function responsible for children's welfare. The Child Advocate's duties include ensuring that children in protective care are informed of their rights, reviewing DCYF procedures and placements, and "[r]ecommend[ing] changes in the procedures for dealing with juvenile problems and the systems for providing child care and treatment." R.I. Gen. Laws § 42–73–7(1)–(5).

Thus, DCYF, not OCA, constituted the "State" for purposes of the statute. Because DCYF is not the party challenging standing here, and OCA is not excluded under 34 C.F.R. § 300.30(a)(3), PPSD's argument fails.

### D. OCA Has Standing as a "Parent" Under 20 U.S.C. § 1401(23)(C)

PPSD also argues that although the Complaint states they are "legally responsible" for Jane's welfare and therefore entitled to file a due process complaint, they have not alleged enough facts to establish that OCA falls within the definition of "parent" under 34 C.F.R. § 300.30. While state law grants OCA the authority to initiate formal legal action, the determinative question is one of federal law: Whether the IDEA's reference to responsibility for a child's "welfare" encompasses such authority. The Court concludes that it does.

OCA is an independent state agency created by the Rhode Island General Assembly with a formal, statutory mandate to protect the legal rights of children in custody and care of the state. *See* R.I. Gen. Laws § 42-73-7. By statute, OCA's responsibilities expressly encompass educational rights. OCA monitors each child in the care of DCYF to protect their legal rights and ensure their safety, including their physical, mental, medical, educational, and behavioral needs while in out-of-home placements. *See id.* OCA has the right to intervene in any case where a child's safety, education, and physical and mental welfare are not being met, and if a resolution cannot be reached, OCA can initiate litigation on the child's behalf.

Because the First Circuit has not addressed whether a state-chartered child advocacy office with a statutory mandate over a child's welfare qualifies as a "parent" under 20 U.S.C. § 1401(23)(C), this Court must resolve the question by reference to the text and remedial purpose of the IDEA. Congress defined "parent" broadly to include not only natural and adoptive parents, but also guardians, surrogate parents,

8

and any individual otherwise legally responsible for the child's welfare. 20 U.S.C.A. § 1401(23)(A)-(D). This definition reflects Congress's intent to ensure that children with disabilities are not deprived of an enforceable advocate under the statute, and yes, even multiple authorized advocates.

OCA itself recognizes IDEA as the governing federal statute for children's educational rights and includes educational advocacy within its mission. R.I. OCA, *Frequently Asked Questions* (recognizing IDEA as the governing federal statute for IEPs), https://childadvocate.ri.gov/node/136. To hold that an entity vested by the Rhode Island General Assembly with responsibility over the welfare and educational interests of children in state custody is not "legally responsible for the child's welfare" under IDEA would construe "parent" too narrowly. Such a construction conflicts with the statute's purpose and the Supreme Court's instruction in *Winkelman v. Parma City Sch. District*, that IDEA's provisions must be construed to ensure that the rights the statute creates are enforceable by those closest to the child's interests. 550 U.S. 516 (2007).

Thus, OCA has standing to pursue this action as a "parent" within the meaning of IDEA because it is an entity "legally responsible for the child's welfare" under 20 U.S.C. § 1401(23)(C).

## IV.    CONCLUSION

For all these reasons, the Court DENIES Defendant PPSD's Motion to Dismiss, ECF No. 12, and finds that the Rhode Island Office of the Child Advocate has standing to bring this claim on Jane Doe's behalf.

9

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Judge


April 20, 2026